FILED & ENTERED

NOV 05 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: 2:08-bk-13547-TD |
| Ronald Jones, | Adversary No.: 2:08-ap-01535-TD |
| | Chapter: 7 |
| | MEMORANDUM OF DECISION |
| Debtor(s), | |
| Karla Olson | |
| Plaintiff(s), | Date: September 21, 2009<br>Time: 10:00 a.m.<br>Location:  Courtroom 1345 |
| Vs. | |
| Ronald Jones | |
| Defendant(s). | |

   This is an adversary growing out of a home repair contract dispute, followed by a 2005 arbitration award and a 2007 state court judgment confirming the award.  Ronald Jones, a home improvement contractor and the judgment debtor, filed a chapter 7 bankruptcy petition following entry of the state court judgment.  Karla Olson, the homeowner and the judgment creditor, filed this adversary seeking nondischargeability of the state court judgment.  The

- 1

dispute was tried by declaration, pursuant to my trial setting order, on September 21, 2009. Both sides filed pretrial briefs.

Olson was the only witness to file a trial declaration. Her declaration was supported by documentary evidence. Jones filed no declaration or other evidence, but Jones filed evidentiary objections to Olson's declaration and documents. At the hearing, I announced oral rulings to each objection and made other preliminary rulings. I now confirm those rulings, except to the extent modified herein. Thus, the dispute was tried with no evidence offered by Jones. Jones moved to dismiss Olson's claims on the ground that the evidence was inadequate to sustain any Olson claim. At the hearing, I reserved judgment on Jones' motion to dismiss. Each side argued its position orally.

My evidentiary ruling at trial sustaining Jones' objection to Exhibit 4 is hereby withdrawn. Upon review of all the evidence, including a new, legible copy of Exhibit 3, I now conclude that Olson's testimony and documentary evidence adequately authenticates Olson's Exhibit 4. Jones' evidentiary objections to Exhibit 4 therefore are overruled.

The following will constitute my findings of fact and conclusions of law.

Olson's home was damaged in a fire on May 19, 2002. She hired Jones the next day to repair the damages. In a written agreement on a form prepared by Jones, Jones agreed to repair the damage for the insurance proceeds paid to Olson. The parties signed the written contract on May 20, 2002 (Ex. 3).

The contract between Olson and Jones (Ex. 3) states, among other things, the following:

> Work:   Contractor to finish [sic] all materials, equipment, subcontractors and perform labor necessary . . . Per insurance settlement. . . .
>
> Contract sum:  Fixed sum . . . Per insurance settlement.
>
> Payment terms:  Payment shall be made by single payment as the work progresses . . . Per insurance settlement. . . .
>
> Insurance:  Client hereby (1) assigns to Contractor, Client's right to be paid insurance proceeds relating to the Work, (2) appoints Contractor as Client's attorney-in-fact to indorse insurance checks issued in Client's name . . . (4) agrees to pay directly to Contractor any amount not covered by Client's insurer . . . .

- 2 -

> All materials, equipment, subcontractors Icon Development will choose unless otherwise specified by client in writing before start date.
>
> Attorneys Fees. If either party becomes involved in litigation arising out of this contract or the performance thereof, the court in such litigation, or in a separate suit, shall award reasonable costs and expenses, including attorney fees, to the party justly entitled thereto. . . .
>
> [Meditation in good faith required unless both sides agree otherwise in writing.]
>
> [California Business & Professions Code § 7159, as amended 1/1/92 is incorporated.]
>
> [Down payment shall not exceed 10% of the contract price.]
>
> In no event shall the payment schedule provide for contractor to receive, nor shall contractor actually receive payment in excess of 100% of the value of the Work, excluding finance charges. . . .
>
> [Arbitration required.]

On June 12, 2002, after the parties signed the written contract, Olson received a joint check for $60,738.01 from her insurance company to pay for specified repairs (Ex. 5), endorsed it, and the adjuster, apparently after deducting its fee, gave Jones a check for $58,575.34 (Ex. 6). Olson endorsed the check to Jones on his promise to hold the money and bill for his services as they were performed. As Olson testified in her declaration, "He assured me that . . . he would repair my house for the money [he] received from the insurance company. I trusted Mr. Jones . . . ." (Olson declaration, 3:19-23). "He told me that he would hold onto the money as my private banker and spend it as needed to buy materials for my house repair and pay his company as money was earned. He told me . . . he would take care of everything." (Olson declaration, 4:18-24).

Over the course of Jones' repair work, Olson and Jones had many disagreements. When disagreements arose during the repair job, Olson asked if she could "just end the contract" and get "the rest of [her] money back" but Olson says she was told that the contract was "sealed" and that she "could not get a refund."

In a January 21, 2003 letter (Ex. 12), Olson fired Jones. In her letter, Olson asked for

an accounting of "monies paid and work performed" and said that she "expected a full refund of monies received . . . for work never performed or completed." Id. She also announced her intent to complain to the Contractors' State License Board. Id. Jones filed a mechanics' lien claim for work and materials for which he claimed he had not been paid. Olson hired other contractors to complete repairs and claimed that completing her home repairs cost her an additional $75,000.

Both Olson and Jones sought recovery of their alleged losses in an arbitration proceeding. Olson prevailed in the arbitration, but she was awarded only $14,919.57 for shortfalls in Jones' performance; as stated in the award, (a) while Jones had received $55,448.57[1] from the insurance proceeds, (b) Olson had received $40,529 in value from Jones' performance. Thus, the arbitrator concluded, Olson was entitled to an award of the difference, $14,919.57. The arbitrator denied Jones' mechanic's lien claim (Ex. 15, including Attachment A).

The arbitrator also awarded Olson compensation for the other damages, prejudgment interest and costs incurred by Olson. This additional compensation brought Olson's total award by the arbitrator to $48,850.96. Id.

The arbitration award also specified that the foregoing sum was to be paid within 30 days from April 26, 2005, the date of the award, and it included "post judgment interest" at the rate of 10% on the entire amount awarded. Id.

When Jones failed to pay, Olson petitioned the Los Angeles Superior Court to confirm the arbitration award. On October 4, 2007, the superior court entered a judgment confirming the arbitration award (Ex. 18). In addition to the arbitration award, the judgment included additional interest, attorney's fees and costs in favor of Olson. These additional items brought Jones' total debt to Olson, as of October 4, 2007, to $63,609.42. Jones filed his chapter 7 petition on March 19, 2008. Olson timely filed this adversary proceeding against Jones. The question presented here is whether Jones' debt to Olson is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) or (a)(4).

---

[1] The discrepancy between Exhibit 6 and this amount is not explained in the evidence.

- 4 -

The evidence now before this court establishes Jones' performance of his obligations under the contract was inadequate and that Olson was entitled to recover additional damages as specified.

The state court judgment is conclusive of the damages suffered by Olson.

Olson asserts that the state court judgment should be nondischargeable because, she claims here, Jones' conduct in accepting insurance proceeds in violation of California law was an "act of accepting money by false pretense, a false representation, or actual fraud," and therefore should be nondischargeable under § 523(a)(2)(A), or, under § 523(a)(4), was an act of fraud or defalcation while acting in a fiduciary capacity or embezzlement.

As the Ninth Circuit has said:

> One of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts. In order to effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.

In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992) (citations omitted).

In Riso, a nondischargeability lawsuit, the court concluded that the contractual restrictions established in the record did not support a claim of tortious violation of plaintiff's property rights. In affirming the bankruptcy court's judgment in favor of the debtor, the Ninth Circuit concluded that while the record supported breach of contract, "nothing in the record indicates that the sale . . . was a tortious violation of the plaintiff's property interest . . . [sufficient to support nondischargeability under § 523(a)(6).]" Id.

As the United States Supreme Court said in Grogan v. Garner:

> This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 130(1934).

Grogan v. Garner, 498 U.S. 279, 286 (1991).

The Ninth Circuit Bankruptcy Appellate Panel has added, in In re McGee that in the circumstances of a default hearing on a nondischargeability claim,

> In order to do justice, a trial court has broad discretion to require that a plaintiff *prove up* even a purported *prima facie* case by requiring the plaintiff to establish the facts necessary to determine whether a valid claim exists that would support relief against the defaulting party.

In re McGee, 359 B.R. 764, 775 (9th Cir. BAP 2006) (citation omitted).

In light of the foregoing authority, the central issue here is whether Olson's *prima facie* evidence supports her claim of nondischargeability under §§ 523(a)(2)(A) or (a)(4).

**Fraud, etc. – § 523(a)(2)(A)?** The dispute here essentially arises out of a written home repair contract. Olson cites California Business & Professions Code § 7159, and accuses Jones of violating the statutory limit on construction deposits. As discussed above, it is true that Olson endorsed her check to Jones and agreed that he could hold the proceeds to apply later in payment for his work as he billed for it. The evidence establishes that Jones did just that, at least to the extent of $40,529 for repair work that we know from the arbitration award was accomplished. This left an unaccounted for balance of $14,919.57, as the arbitrator found in his award. Clearly, Jones is responsible to Olson for the shortfall, together with other damages, costs and attorneys' fees, as found by the arbitrator and as reflected in the superior court judgment.

The evidence does not support a conclusion that Jones violated § 523(a)(2)(A) by making a false representation, acting under false pretenses, making a promise he did not intend to keep, or that he intended to deceive Olson. The evidence also does not prove that any Jones false representation or promise proximately caused Olson's losses. The evidence is more consistent with a finding that Olson and Jones did not get along with each other, had many disagreements, and finally came to very different conclusions about each other's contractual rights and obligations over the course of their business dealings. It also may be true that Olson performed negligently or that his conduct violated California contractor law. Nevertheless, I conclude that the dispute was primarily a contractual dispute not subject to

nondischargeability under § 523(a)(2)(A).  Business & Professions' Code § 7159, is a criminal statute, not a civil statute.  There is no basis here for a finding that § 7159 applies in this nondischargeability action.

**Fraud or defalcation while acting in a fiduciary capacity** – **§ 523(a)(4)?**  Olson says "she trusted [Jones]," he took her insurance money and failed to perform.  Olson's testimony, as summarized above, does not satisfy the recognized test for nondischargeability of Jones' debt to Olson on the basis that Jones was a fiduciary under § 523(a)(4).  A "fiduciary relationship" is defined narrowly under bankruptcy law as one arising from an express trust that was imposed before and without reference to the wrongdoing that caused the debt.

In In re Pedrazzini, 644 F.2d 756 (9th Cir. 1981), the plaintiff sought to hold debtor, a contractor, liable as a fiduciary under the predecessor to § 523(a)(4) based on other Business & Professions Code language similar to that cited here by Olson.  The bankruptcy court and the district court denied the claim.  On appeal, the Ninth Circuit affirmed, saying that for nondischargeability as a fiduciary, "The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing." Id. at 758 (citations omitted).  As for the applicable Business & Professions Code statutes, in Pedrazzini, the court said: "The California statutes do not create the basic elements of a trust.  No res is defined and no fiduciary duties are spelled out.  Therefore, the statutes do not create a true fiduciary relationship between the parties." Id. at 759.  I believe that in the dispute pending before me, neither the California statute nor the contract between the parties spells out proof of a fiduciary undertaking by Jones adequate to support nondischargeability on a *prima facie* basis.

Similarly, in a somewhat different context, the California District Court of Appeal said:

> The use of the word "trust" in a grant [for charitable purposes] does not without more make a trust.  To constitute a trust there must be trust intent, trust property, trust purpose and a beneficiary.  The intention to create a trust must be shown by more than an expression of intent to establish a moral obligation: "The problem is one of construction, but ordinarily words of desire, hope or recommendation that a devisee or legatee use the property given

>him from the benefit of another do not create a trust. The direction
>must be imperative."

Walton v. Red Bluff, 2 Cal.App. 4th 117, 124 (1991) (citations omitted). Olson's evidence here, while establishing contractual rights under California law falls somewhat short of establishing, even on a *prima facie* basis, the formal requirements for an express trust necessary to the imposition of fiduciary responsibility. Rather, Olson's evidence establishes no more than negligence or contractual or moral responsibility on Jones' part.

The case law cited by Olson is insufficient to support a finding of fiduciary responsibility on Jones' part here. For example, in In re Burgholzer, 370 B.R. 58, 63 (Bankr. W.D.N.Y. 2007), the court denied a nondischargeability claim against the debtor; it did so only on the basis of a New York statute that expressly dealt with diversion of trust funds in the hands of a statutory trustee. Olson's evidence falls short of establishing "diversion of trust funds" by a "statutory trustee." The same problem exists with respect to In re Coley, 354 B.R. 813, 819 (Bankr. N.D.TX 2006), cited by Olson, which was decided on the basis of a Texas statute creating an express trust with respect to construction payments held by a statutory trustee.

Finally, Hemphill v. Contractors' State License Board, 167 Cal.App.2d 340 (1959), cited by Olson, comes a bit closer. There, the Contractors' State License Board revoked Hemphill's contractor's license based on findings that Hemphill had "breached a statutory fiduciary duty with the intent of making a secret and undisclosed profit by submitting false statements for materials and services rendered and by permitting subcontractors to willfully deviate from the plans and specifications to the material prejudice of the owner." Id. Hemphill sought a writ of mandate from the superior court. The court denied the writ. On appeal, the appellate court affirmed, concluding that the board had jurisdiction and that the evidence amply supported its findings. Id. at 344.

The problem with Olson's argument is that in Hemphill, the California court was dealing with a state regulatory statute that imposed an express fiduciary duty on the affected contractors, and the issues involved violations of the statute, falsification, victimization of the public, and license revocation. Olson's complaints and evidence of under performance by Jones and her dispute about whether or not work was performed adequately fall into the

breach of contract or negligence realm.  Olson's evidence does not support a finding of intent to deceive or fraud as necessary to nondischargeability.

**Embezzlement – § 523(a)(4)?**  In the Ninth Circuit, proof of nondischargeability for embezzlement requires proof of these elements: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud."  In re Littleton, 942 551, 555 (9th Cir. 1991) (citations omitted).  It can be questioned here whether Jones received Olson's insurance proceeds "rightfully," in light of Business & Professions Code § 7159.  Olson's evidence falls short of establishing an adequate *prima facie* basis for a finding of fraud.  There is no evidence that Jones used Olson's money for anything other than repairing Olson's home, while the relationship ended with a dispute in which each party was aggrieved – Olson over the adequacy of the work, and Jones over the payment received.  While Jones' grievance was rejected in the arbitration, the only evidence that Jones' belief in his claim was ill-founded was the arbitrator's award denying Jones the relief he requested.  Olson has failed to establish any basis for a finding of embezzlement and nondischargeability under § 523(a)(4).  Jones failed to prove his claim to the arbitrator.  Olson failed to prove here her claim of fraudulent conduct by Jones.

## CONCLUSION

Olson's evidence fails to establish, either on a *prima facie* basis or pursuant to §§ 523(a)(2)(A) or (a)(4), nondischargeability of Jones' debt to her, based on her state court judgment or otherwise.  Jones' oral motion to dismiss this adversary is granted.

A separate judgment shall be entered in favor of Jones.

Because of the presence in the record of significant evidence of professional shortcomings on Jones' part that contributed substantially to Olson's damages, the court also

- 9 -

determines, pursuant to 11 U.S.C. § 523(d), that this adversary presents special circumstances that would make unjust any award of costs and attorney's fees to Jones.

Each party shall bear its own costs and attorney's fees.

###

DATED: November 5, 2009

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  MEMORANDUM OF DECISION
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 10/5/09, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

Gary Kurtz on behalf of Plaintiff Karla Olson
20335 Ventura Blvd Ste 200
Woodland Hills, CA 91364

David Romley on behalf of Defendant Ronald Jones
10629 Franlie Dr
Los Angeles, CA 91040

<u>Defendant/Debtor</u>
Ronald Jones
3962 S Dalton Ave
Los Angeles, CA 90062

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page